UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ALEXANDER RAHEB, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DELAWARE NORTH COMPANIES, ) <br> INC.-BOSTON, and UG2 LLC, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. <br> 21-10910-FDS |

**MEMORANDUM AND ORDER ON MOTION OF DELAWARE NORTH COMPANIES, INC.-BOSTON FOR SUMMARY JUDGMENT ON COUNTS 3 AND 4 OF CROSSCLAIMS**

**SAYLOR, C.J.**

This case arises out of a slip and fall incident at a hockey game at TD Garden in Boston. Jurisdiction is based on diversity of citizenship.

Plaintiff Alexander Raheb slipped on a wet floor while walking to his seat at a Boston Bruins game, injuring his leg. TD Garden is owned and operated by defendant Delaware North Companies, Inc.-Boston. UG2 LLC contracted with Delaware North to provide janitorial services at the arena during events. The complaint alleges one count of negligence against each defendant for failure to keep the premises free of slippery conditions and for allowing drinks to be sold in plastic cups without lids. Delaware North has filed crossclaims against UG2 LLC for contribution, implied indemnification, express indemnification, and breach of contract.

Delaware North has moved for summary judgment on the duty-to-defend component of its express-indemnification claim and on its breach-of-contract claim.

For the following reasons, summary judgment on Delaware North's crossclaims will

be denied.

I. **Background**

Except where otherwise noted, the following facts are undisputed.

A. **The Parties**

Alexander Raheb is a resident of Rhode Island. (Amend. Compl. ¶ 1).

Delaware North Companies, Inc.-Boston ("Delaware North") is a Massachusetts corporation with a principal place of business in Massachusetts. (*Id.* ¶ 2). At all relevant times, Delaware North owned and operated TD Garden, a 19,600-seat sports arena located in Boston. (*Id.* ¶ 8).

UG2, LLC is a limited liability company whose single member is a citizen of Massachusetts. (*Id.* ¶ 3; Docket No. 82). At all relevant times, it provided janitorial services at the Garden pursuant to a contract with Delaware North. (Compl. ¶ 9).

B. **The Accident**

The details of the alleged accident are set forth in greater detail in the Memorandum and Order of the Court on defendants' motions for summary judgment as to plaintiff's claims of negligence, dated July 7, 2023. For present purposes, it is sufficient to note that Raheb alleges that on April 13, 2019, he slipped and fell on a wet floor at TD Garden while attending a hockey game.

During events at TD Garden, UG2 employees patrol the concourse with mops. (De Los Santos Dep. at 17-18; DeLeon Dep. at 27). Eight cleaners are assigned to each of the nine floors. (De Los Santos Dep. at 18). Before the event, UG2 reminded its cleaners to walk the concourse to ensure the floor was not wet. (De Los Santos Dep. at 22-23). According to the incident reports produced in discovery, there were at least 14 slip and fall accidents due to wet-floor

incidents at TD Garden in the three years prior to Raheb's fall.  (Docket No. 72).

  C.  **The Facility Service Contract**

In March 2016, Delaware North and UG2 entered into a Facility Service Contract. (Docket No. 63, Ex. 1 ("MacFadyen Aff.")).[1]  Under that contract, UG2 was responsible for providing "all labor, material, tools and equipment, and supervision" for housekeeping services, including "all base building cleaning, pre-event cleaning, event cleaning and post-event [cleaning]."  (Docket No. 63, Ex. 1 ("Facility Service Contract") ¶ 1, Ex. A).

The contract contains the following indemnification clause:

> Upon prompt written notice, [UG2] . . . agrees to indemnify, defend (with counsel reasonably acceptable to [Delaware North]) and save harmless, [Delaware North] . . . from and against any and all damages, claims, liabilities, losses, costs or expenses (including reasonable attorneys' fees and costs) from, for, relating to or arising out of (a) any injury to . . . any person . . . to the extent arising from or caused by any negligent act or omission of [UG2] or any of [UG2's] employees . . . except to the extent caused by an Indemnified Parties' negligence or willful misconduct.

(Facility Service Contract ¶ 9).  The contract also includes an insurance provision requiring UG2 to "provide and maintain at its own expense . . . such insurance as may be required from time to time either by [Delaware North] or by Applicable Laws, including, without limitation, all insurance requirements set forth in Exhibit C."  (*Id.* ¶ 8).  Exhibit C requires UG2 to "provide and maintain at [its] own expense . . . [c]ommercial general liability insurance, primary and umbrella, with a combined single limit in the amount" of $1,000,000 per occurrence, and an aggregate limit of $2,000,000.  (*Id.* Ex. C).  The contract requires that the insurance policy include express provisions ensuring that the insurer "waives its subrogation rights against and agrees to defend" Delaware North, "agrees that [UG2's] policy shall not impose any obligation

---

[1] The contract states that its provisions "shall be governed by the law of the state in which the Property is located," which in this case is Massachusetts.  (Docket No. 63, Ex. 1 ("Facility Service Contract") ¶ 15.d).

upon [Delaware North] to pay any deductible, self-insured retention;" and "agrees that any insurance or self-insurance coverage maintained by [Delaware North] shall not contribute to insurance provided by Contractor and the Contractor's coverage shall be deemed primary coverage."  (*Id.* Ex. C).

As noted, the accident occurred on April 13, 2019.  A "First Aid Report Patron Injury" from the date of the accident states that Raheb "slipped on wet floor due to spilled beer." (Docket No. 75, Ex. 2).  On May 14, 2019, counsel for Raheb sent a letter to the third-party claims administrator of Delaware North, Gallagher Bassett Services, Inc., stating that they represented plaintiff "with regard to personal injuries he sustained at TD Garden on April 13, 2019."  (Docket No. 75, Ex. 3).[2]  A representative from Gallagher Bassett spoke with Raheb concerning the incident in May 2019.  (Docket No. 63, Ex. B ("Ford Aff.")).

On August 6, 2019, Gallagher Bassett sent a letter to UG2, specifically stating that Delaware North was placing it on notice of Raheb's claim and requesting defense and indemnity and that it refer the matter to its insurance carrier.  (*Id.* ¶ 4).  On August 12, 2019, a claims professional for Travelers informed Gallagher Bassett that it was UG2's insurance carrier.  (*Id.* ¶ 5).[3]

Neither UG2 nor Travelers has agreed to defend or indemnify Delaware North.  (Docket No. 63, Ex. C ("Wild Aff."); *see also* Docket No. 75, Ex. 8).

D.   **Procedural Background**

Plaintiff filed suit on March 11, 2021, alleging identical negligence claims against

---

[2] At the time of the accident, Gallagher Bassett Services, Inc. was the third-party administrator for claims against Delaware North Companies, Inc.-Boston.  (Ford Aff. ¶ 2).  Broadspire took over third-party adjusting for this matter on August 1, 2020.  (*Id.* ¶ 6).

[3] Neither the August 6 nor the August 12 letters are in the record submitted to the court.

Delaware North (Count 1) and UG2 (Count 2).  The amended complaint alleges that defendants could have foreseen that Delaware North's "mode of operation of allowing drinks to be sold in plastic cups with no lids that patrons had to transport from the concession stand to their seats" was likely to lead to spills, that they breached their duty of care to keep the concourse in a reasonably safe condition by failing to prevent spills, and that plaintiff was injured and suffered damages as a result of defendants' breach.  The complaint alleges that defendants are jointly and severally liable.

Delaware North filed the following crossclaims against co-defendant UG2:  contribution (Count 1); indemnification (Count 2); express indemnification (Count 3); and breach of contract (Count 4).  UG2 then filed the following crossclaims against Delaware North:  contribution (Count 1); and indemnification (Count 2).

Delaware North has moved for summary judgment on Counts 3 and 4 of its crossclaim against UG2.

## II.   Standard of Review

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)).  Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted).  In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of

the nonmoving party. *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotations omitted). The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

### III. Analysis

Delaware North has moved for summary judgment on Counts 3 and 4 of its crossclaims against UG2. It contends that UG2 was contractually obligated to defend Delaware North against plaintiff's claims, and that UG2's failure to do so, as well as its failure to obtain liability insurance, is a breach of contract.

#### A. Crossclaim Count 3: Express Indemnification

Under Massachusetts law, where material facts are not in dispute, interpretation of an indemnity clause is an issue of law. *Caldwell Tanks, Inc. v. Haley & Ward, Inc.*, 471 F.3d 210, 215 (1st Cir. 2006). Indemnification clauses are "to be interpreted like any other contract, with attention to language, background, and purpose." *Herson v. New Bos. Garden Corp.*, 40 Mass. App. Ct. 779, 782 (1996). Such clauses "are to be fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished." *Post v. Belmont Country Club, Inc.*, 60 Mass. App. Ct. 645, 651 (2004) (quoting *Shea v. Bay State Gas Co.*, 383 Mass. 218, 222 (1981)). Unambiguous contract language must be "interpret[ed] according to its plain terms." *Bank v. International Bus. Machs. Corp.*, 145 F.3d 420, 424 (1st Cir. 1998) (quotation marks and citations omitted). "If those plain terms unambiguously favor either side, summary judgment is appropriate." *Id.*

As an initial matter, Count 3 encompasses both the duty to defend and the duty to

indemnify.  (*See* Crossclaim Count 3 ("UG2 LLC is required to defend and indemnify the crossclaim plaintiff in this matter.")).  However, Delaware North seeks judgment only as to the defense obligation.  (D. North Mem. at 4).  In any case, summary judgment on the indemnification issue would be untimely, because while "an insurer's duty to defend is 'measured by the allegations of the underlying complaint,' the duty to indemnify is 'determined by the facts, which are usually established at trial.'"  *Narragansett Bay Ins. Co. v. Kaplan*, 146 F. Supp. 3d 364, 372 (D. Mass. 2015) (quoting *Travelers Ins. Co. v. Waltham Indus. Lab'ys Corp.*, 883 F.2d 1092, 1099 (1st Cir. 1989)).

"In order to determine whether an insurer has a duty to defend, a comparison must be made of the facts alleged in the underlying complaint with the insurance policy provisions." *Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F.3d 399, 403 (1st Cir. 2009).  The duty to defend is triggered when the facts as alleged in the complaint "are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms." *Billings v. Commerce Ins. Co.*, 458 Mass. 194, 200 (2010).  The relevant facts need not "specifically and unequivocally" make out a claim that falls within the insurance coverage, but need only show "a possibility" that the liability is within the coverage.  *Id.* at 200-01 (quoting *Sterilite Corp. v. Continental Cas. Co.*, 17 Mass. App. Ct. 316, 319 (1983)).  However, when the relevant allegations "'lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate' or defend the claimant." *Siebe, Inc. v. Louis M. Gerson Co.*, 74 Mass. App. Ct. 544, 553 n.20 (2009) (quoting *Timpson v. Transamerica Ins. Co.*, 41 Mass. App. Ct. 344, 347 (1996)).

> The indemnification provision states in relevant part:
>
> Upon prompt written notice, [UG2] . . . agrees to . . . defend . . . [Delaware North] . . . from and against any and all damages, claims, liabilities, losses, costs or

expenses (including reasonable attorneys' fees and costs) from, for, relating to or arising out of (a) any injury to . . . any person . . . to the extent arising from or caused by any negligent act or omission of [UG2], except to the extent caused by [Delaware North's] negligence or willful misconduct.

(Facility Service Contract ¶ 9). Therefore, the plain language of the contract indicates that the duty to defend arises "upon prompt written notice," and applies to claims of a "negligent act or omission" by UG2. UG2 contends that neither requirement has been met here.

### 1. "Prompt Written Notice"

UG2 first contends that the duty to defend does not apply because Delaware North failed to provide prompt written notice of Raheb's claim.

The indemnification clause requires prompt notice as a "condition precedent" to the duty to defend. *See Cheschi v. Boston Edison Co.*, 39 Mass. App. Ct. 133, 142 (1995). What qualifies as a reasonable time period is a question of fact, but where the basic facts are undisputed, it may become a question of law. *Segal v. Aetna Cas. & Sur. Co.*, 337 Mass. 185, 188 (1958). Where sophisticated parties negotiate a contractual indemnification provision requiring prompt notice, the indemnifier need not demonstrate that it was prejudiced by the late notice (unless required by the contract). *Cheschi*, 39 Mass. App. Ct. at 141-42; *see also F.D.I.C. v. Ins. Co. of N. Am.*, 105 F.3d 778, 787 (1st Cir. 1997) (following *Cheschi* in concluding that notice prejudice rule does not apply where policy of protecting customers with limited bargaining power is not at issue).

Plaintiff informed Delaware North's claim administrator that he had retained counsel on May 14, 2019, and the claim administrator followed up with plaintiff later that month. (Docket No. 75, Ex. 3; Ford Aff. ¶ 3).[4] The claims administrator formally put UG2 on notice of Raheb's

---

[4] UG2 has submitted a First Aid Report filed on the date of the accident in TD Garden's name, (Docket No. 75, Ex. 2) but it is not clear exactly when Delaware North learned of the accident.

8

claim and requested defense and indemnity from UG2 and its insurer on August 6, 2019. (Ford Aff. ¶ 4). Raheb filed suit on March 11, 2021.

Massachusetts courts have in some cases held that notice to an insurer made months after an accident is not prompt. *See, e.g.*, *Royal-Globe Ins. Co. v. Craven*, 411 Mass. 629, 632 (1992) (three-to-four months); *Depot Cafe v. Century Indem. Co.*, 321 Mass. 220, 223 (1947) (46 days); *Segal*, 337 Mass. at 185 (four months). However, cases dealing with notice of an accident are not necessarily applicable to cases concerning notice of a pending or anticipated lawsuit. For one, while prompt notice of an accident "is required in order to give the insurer an opportunity to investigate the cause and nature of a claim while the facts are still fresh in the minds of the parties," it is not always clear whether threatened litigation is likely to materialize into a lawsuit. *Segal*, 337 Mass. 185 at 188-89. Here, notice was made four months after plaintiff retained counsel, but nearly seven months before the complaint was filed. Furthermore, the parties could have used more specific language to define the acceptable notice period and chose not to. *See Grenier v. Delaware N. Companies, Inc.—Bos.*, 95 Mass. App. Ct. 1111, *3 (2019) (indemnity provision requiring notice of a claim within twenty-one days).

Under the circumstances, the Court concludes that a genuine issue of material fact exists as to whether notice of Raheb's claim was prompt. Accordingly, summary judgment on that basis will be denied.

### 2. "Negligent Act or Omission"

UG2 next contends that the duty to defend does not apply because there has been no finding of a negligent act or omission on its part, and that there cannot be such a finding if the court grants its motion for summary judgment on Count 2 of the complaint.

UG2 misstates the relevant inquiry. Under what courts refer to as the "pleadings test," "[t]he obligation of an insurer to defend is not, and cannot be, determined by reference to the

facts proven [or to be proven] at trial.  Rather, the duty to defend is based on the facts alleged in the complaint and those facts which are known by the insurer." *Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F.3d 399, 403 (1st Cir. 2009) (quoting *Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7 (1989)).  Furthermore, "[t]he obligation to defend exists even though the claim against the insured appears to lack merit, and even though there may be additional facts tending to negate coverage." *Siebe, Inc.*, 74 Mass. App. Ct. at 554 (citing *Flori v. Allstate Ins. Co.*, 120 R.I. 511 (1978)) (finding a duty to defend in connection with any alleged breaches covered under the contract, and concluding that insured need not establish an actual breach).[5]

The complaint alleges two identical claims for negligence—one against Delaware North, and the other against UG2.  Count 2 alleges that UG2 "owed a legal duty of care to Plaintiff to keep and maintain its property and premises . . . free from slippery surfaces," that "by and through [its] agents, servants, representatives, and employees," it breached its "legal duty of care to keep and maintain the concourse level in a reasonably safe condition by failing to prevent liquid from being on the concourse floor," and that UG2's breach directly and proximately caused plaintiff's injuries, resulting in damages. (Amend. Compl. ¶¶ 33-40).  Count 2 clearly

---

[5] The court in *Gorelick v. Star Markets Co., Inc.*, 102 Mass. App. Ct. 219, 221 (2023), *review denied*, 491 Mass. 1106 (2023), questioned whether later cases have abrogated the part of *Siebe* applying the "pleadings test" outside of the general liability-insurance context.  For example, in *Deutsche Bank Nat. Ass'n v. First Am. Title Ins. Co.*, 465 Mass. 741 (2013), the court concluded that a title insurer, unlike a general liability insurer, "does not have a duty to defend simply because the allegations in the underlying complaint are "'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms." *Id.* at 746.  Instead, a "title insurer's duty to defend is triggered only where the policy specifically envisions the type of loss alleged." *Id.* at 747.  *Siebe* itself acknowledged that standards from the insurance context do not automatically apply "to indemnity and duty to defend provisions in the commercial [context]." *Siebe, Inc.*, 74 Mass. App. Ct. at 556.

The court in *Gorelick* ultimately declined to reach the question of what standard applies to indemnification provisions contained within commercial contracts, because "no reasonable interpretation of the [contract] required [one co-defendant] to defend claims that [the other co-defendant] itself was negligent." *Gorelick*, 102 Mass. App. Ct. at 226, n.6.  Because the court reaches the same conclusion here regarding the Facility Service Contract, whether the pleadings test applies in suits involving commercial contracts is ultimately irrelevant.

alleges a "claim" "relating to or arising out of" an injury to plaintiff "arising from or caused by any negligent act or omission of [UG2]." (Facility Service Contract ¶ 9). UG2 therefore has a duty to defend against Count 2 (and has undertaken that duty, including by filing for summary judgment).

However, the relevant question is whether UG2 has a duty to defend plaintiff's negligence claim against *Delaware North*. The indemnification provision demonstrates a clear intent for UG2 to defend claims only "*to the extent* arising from or caused by" its own negligence, and "*except* to the extent caused by [Delaware North's] negligence or willful misconduct." (Facility Service Contract ¶ 9). That language expresses a clear intent to limit UG2's defense obligations to claims arising from its own negligence. Count 1 parallels the language of Count 1 for Delaware North, alleging that it breached its duty of care by failing to prevent slippery floors. Therefore, Count 1 is not a "claim" that falls within the coverage of the duty to defend provision.

Although neither party raises the issue, Delaware North's argument could also be interpreted to invoke the "in for one, in for all" rule applicable in the insurance context. That rule "requires an insurer to defend all claims in a complaint brought against an insured if at least one claim falls within the scope of the insurer's duty to defend." *Gorelick v. Star Markets Co., Inc.*, 102 Mass. App. Ct. 219, 221 (2023), *review denied*, 491 Mass. 1106 (2023). However, Massachusetts courts have been reluctant to extend the rule outside of the insurance context. For example, in *Gorelick v. Star Markets Co., Inc.*, 102 Mass. App. Ct. 219 (2023), a supermarket and its supplier entered into a purchase order containing a provision requiring the supplier to defend the supermarket "from and against any and all claims . . . which arise out of or in connection with [the supplier's] . . . breach of any covenants, warranties or representations." *Id.*

11

at 221.  A plaintiff injured by an automatic door filed suit alleging that the supermarket was negligent in inspecting and maintaining the door, and that the supplier was negligent with respect to its installation.  The supplier refused to assume the defense of the entire suit, contending that "its duty to defend did not extend to claims that [the supermarket] itself was negligent . . . ." *Id.* at 222.  The court agreed, concluding that the rationale for applying the "in for one, in for all" rule applicable in the context of general liability insurance—where it is "impractical" to "divid[e] representation between [the] covered and noncovered claims"—did not apply to the commercial contract at issue.  *Id.* at 225 (quoting *GMAC Mtge., LLC v. First Am. Title Ins. Co.*, 464 Mass. 733, 739 (2013)).  *See also GMAC Mtge., LLC*, 464 Mass. at 744 ("A title insurer does not have a duty to defend the insured in the entire lawsuit where one claim is within the scope of the title insurance coverage and other claims are not.").

Like *Gorelick*, this case involves an indemnification provision contained in a commercial contract that limits the duty to defend to claims arising from the indemnifier's own acts.  Following the reasoning of *Gorelick*, therefore, the court finds that Delaware North has failed to show that UG2 has a duty to defend against the negligence count alleged against Delaware North.

Accordingly, summary judgment on Count 3 will be denied.

B. **Crossclaim Count 4:  Breach of Contract**

Finally, Delaware North moves for summary judgment on Count 4, alleging that UG2 breached the indemnification and insurance provisions of the Facility Service Contract.

To prevail on summary judgment for breach of contract in Massachusetts, a plaintiff must prove beyond dispute "that there was a valid contract, that [the crossclaim defendant] breached its duties under the contractual agreement, and that the breach caused [the crossclaim plaintiff] damage."  *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 316 (D. Mass. 1997).

There is no dispute that the Facility Service Contract between Delaware North and UG2 was a valid contract in effect at the time of the accident. (MacFadyen Aff. ¶ 3). Nor is it disputed that UG2 and its insurance carrier have declined to defend Delaware North against Raheb's suit, or that Delaware North has incurred legal costs associated with its defense. (Wild Aff. ¶¶ 5-6). Therefore, the only question remaining is whether UG2 breached its duties under the contract.

With respect to the duty to defend component of the indemnification provision, the court has already concluded that UG2 did not have a duty to defend Delaware North against claims of its own negligence. Therefore, Delaware North has not shown that UG2 breached the duty to defend obligation under the indemnification provision.

Nor has Delaware North shown that UG2 breached the insurance provision. Under Paragraph 8 and Exhibit C of the Facility Service Contract, UG2 is required to provide and maintain "commercial general liability insurance, primary and umbrella," with a combined single limit of $1,000,000 per claim and an aggregate limit of $2,000,000. The insurance policy is also required to "include express provisions in which the insurer . . . agrees to defend [Delaware North]." (Facility Service Contract Ex. C).

It is undisputed that UG2 retained an insurance provider. (*See* Ford Aff. ¶ 5 (stating that Delaware North's third-party claim administrator received notice that Travelers was UG2's insurance carrier)). However, there is insufficient evidence in the record to conclude whether the terms of the insurance policy satisfy the requirements of the Facility Service Contract. Therefore, Delaware North has not met its burden of establishing that UG2 has breached its obligations under the insurance provision.

Accordingly, summary judgment on Count 4 of Delaware North's crossclaims will be

denied.

## IV. Conclusion

For the foregoing reasons, the motion of Delaware North for summary judgment on Counts 3 and 4 of its crossclaims against UG2 is DENIED.

**So Ordered.**

Dated: July 7, 2023

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court